**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gary L. Wagoner, et al., | No. CV-25-02826-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| JPMorgan Chase & Company, | |
| Defendant. | |

On July 11, 2025, *pro se* Plaintiff filed a complaint in Maricopa County Justice Court. (Doc. 1-1 at 4-9.) The complaint alleges that Plaintiff is a licensed physician and trustee of the Catalina Seaward Trust, a medical services entity; that Defendant acts as a plan sponsor for a health-related benefit plan; that Defendant "issued material communications regarding payment expectations to Arizona providers" and made "material misrepresentations and omissions regarding how claims would be handled and evaluated"; that Plaintiff relied on those representations when deciding to provide medical services to non-party S.H.; and that when Plaintiff sought payment from Defendant based on S.H.'s assignment of rights to him, Defendant improperly denied payment. (*Id.*) Based on those allegations, Plaintiff asserts state-law claims for "unjust enrichment, negligent misrepresentation, and equitable estoppel," as well as state-law statutory claims under "A.R.S. §§ 12-541 [malicious prosecution; false imprisonment], 12-543 [oral debt; stated or open account], 20-443 [misrepresentations and false advertising of policies; false disclosure of compensation], 20-461 [unfair claim settlement practices], 44-1522 [unlawful

practices; intended interpretation of provisions].” (*Id.*)

Attached to the complaint is an invoice showing that Plaintiff provided $6,800 of medical services to S.H. (*Id.* at 9.) Nevertheless, the complaint only seeks $3,500 in damages, because this is "within the statutory maximum for Small Claims jurisdiction," but the complaint also clarifies that "[i]f transferred to a higher court by valid legal order, Plaintiff reserves the right to amend this claim to demand the full amount of $6,800, the originally billed amount for unpaid anesthesia services." (*Id.* at 5-6 ¶¶ 3, 6.) Finally, the complaint "explicitly disclaims any reliance upon, or assertion of, any rights, benefits, or remedies governed by federal statute, including 29 U.S.C. § 1001 et seq. (ERISA). This case does not arise under ERISA, nor does it require interpretation of any plan document. . . . If this case is wrongfully removed to federal court, Plaintiff shall immediately seek remand and the harshest sanctions permitted by law . . . ." (*Id.* at 5-6 ¶¶ 2, 5.)

After being served, and notwithstanding the assertions in the complaint regarding the inapplicability of ERISA, Defendant timely removed the action to federal court under the theory that because Plaintiff's "claims stem entirely from payment of medical bills he claims are owed by Defendant, acting as a plan sponsor of its ERISA-governed group health plan," "this case is properly removable." (Doc. 1 ¶¶ 7-8.) Plaintiff, in turn, has filed a motion to remand (Doc. 13) and Defendant has filed a response in opposition (Doc. 15). Plaintiff did not file a reply or request oral argument.[1]

The Court does not write on a blank slate in addressing these issues. In recent years, Plaintiff has filed an array of lawsuits in Arizona small claims court against plan sponsors of health-related benefit plans. *Wagoner v. UnitedHealthCare*, 2:22-CV-00827-DJH (Doc. 1-3 at 4-16); *Wagoner v. First Fleet Inc.*, 2:22-CV-00990-JAT (Doc. 1-3 at 5-15); *Wagoner v. State Industrial Products*, 2:22-CV-01238-SPL (Doc. 1-1 at 2-10); *Wagoner v. Pinnacle West Capital Corp.*, 2:22-CV-1359-SMB (Doc. 1-3 at 5-15); *Wagoner v. First Fleet Inc.*, 2:25-CV-01474-PHX-JJT (Doc. 1-1 at 2); *Wagoner v. State Industrial Products Corp.*, 2:25-CV-01763-JJT (Doc. 1-1 at 2-4); *Wagoner v. FirstFleet Inc.*, 2:25-CV-02349-DJH

---

[1] Defendant's request for a hearing is denied because the issues are fully briefed and argument would not aid the decisional process. *See* LRCiv 7.2(f).

(Doc. 1-1 at 6-11); *Wagoner v. FirstFleet Inc.*, 2:25-CV-03099-SMB (Doc. 1-1 at 6-10).

After removing those actions to federal court, several defendants successfully moved to dismiss under the theory that Plaintiff's state-law claims were preempted by ERISA. *See, e.g., Wagoner v. UnitedHealthCare*, 2:22-CV-00827-DJH (Doc. 16 at 3-4 [concluding that Plaintiff's "common law claims for breach of contract and unjust enrichment" were "preempted by Section 514(a)" of ERISA, even though they arose from state-law doctrines of general applicability, because they "have a 'connection with' an ERISA plan"]); *Wagoner v. First Fleet Inc.*, 2:22-CV-00990-JAT (Doc. 14 at 9 ["[T]he Court finds the following: (1) Claim One, encompassing breach of contract and unjust enrichment, is preempted under ERISA; (2) Claim Two fails to state a claim under which Plaintiff is entitled to relief; (3) Claim Three is preempted under ERISA; and (4) Claim Four reflects damages Plaintiff seeks and is not an independent cause of action."]); *Wagoner v. Pinnacle West Capital Corp.*, 2:22-CV-1359-SMB (Doc. 13 at 2, cleaned up ["The Supreme Court has held that ERISA preempts state common law tort and contract causes of action asserting improper processing of a claim for benefits under an insured employee benefit plan. The Ninth Circuit has held that claims under state insurance statutes are also preempted by ERISA. Therefore, the Court finds that all of Plaintiff's claims are preempted by ERISA and his only remedy is to file a claim under ERISA."].) In other cases, Plaintiff either voluntarily dismissed his claims, *Wagoner v. First Fleet Inc.*, 2:25-CV-01474-PHX-JJT (Doc. 6), or had his claims summarily dismissed for failure to respond to the defendant's ERISA-based motion to dismiss, *Wagoner v. State Industrial Products*, 2:22-CV-01238-SPL (Doc. 9). Finally, in a more recent case, Plaintiff filed a motion to remand before the defendant could file a motion to dismiss, advancing many of the same arguments he advances here, only for the court to deny his motion. *Wagoner v. State Industrial Products Corp.*, 2:25-CV-01763-JJT (Doc. 15).

For similar reasons, the Court denies Plaintiff's remand request here. "[C]omplete preemption under ERISA § 502(a), 29 U.S.C. § 1132(a), . . . is really a jurisdictional rather than a preemption doctrine, as it confers exclusive federal jurisdiction in certain instances

where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim. . . . [W]hile federal pre-emption is ordinarily a federal defense to the plaintiff's suit, Congress had clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court. Complete preemption removal is an exception to the otherwise applicable rule that a plaintiff is ordinarily entitled to remain in state court so long as its complaint does not, on its face, affirmatively allege a federal claim." *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 944-45 (9th Cir. 2009) (cleaned up).[2]  As a result, Plaintiff's contention that a remand is required because "[t]he Plaintiff's Complaint Expressly Disclaims ERISA" (Doc. 13 at 2) is unavailing.  If Defendant is correct that any of Plaintiff's state-law claims are completely preempted under § 502(a) of ERISA, Defendant could permissibly remove this action to federal court. *Fossen v. Blue Cross & Blue Shield of Montana, Inc.*, 660 F.3d 1102, 1110-11 (9th Cir. 2011) ("This question requires a practical, rather than a formalistic, analysis because claimants simply cannot obtain relief by dressing up an ERISA benefits claim in the garb of a state law tort. . . . [D]istinguishing between pre-empted and non-pre-empted claims based on the particular label affixed to them would elevate form over substance and allow parties to evade the pre-emptive scope of ERISA simply by relabeling their claims.") (cleaned up); *Marin Gen. Hosp.*, 581 U.S. at 946 ("If state-law causes of action come within the scope of § 502(a)(1)(B), those causes of action are completely preempted, and the only possible cause of action is under § 502(a)(1)(B). In that event, a federal district court has federal question jurisdiction, either original jurisdiction under § 1331(a) or removal jurisdiction under § 1441(a), to decide whether the plaintiff has stated a cause of action under § 502(a)(1)(B).").

---

[2] In contrast, "different jurisprudential consequences" arise when a defendant raises a claim of "conflict preemption under ERISA § 514(a), 29 U.S.C. § 1144(a)"—namely, "a defense of conflict preemption under § 514(a) does not confer federal question jurisdiction on a federal district court" and thus "even if the defendant has a defense of conflict preemption within the meaning of § 514(a) because the plaintiff's claims 'relate to' an ERISA plan, the district court is without subject matter jurisdiction." *Marin Gen. Hosp.*, 581 F.3d at 944-45 (cleaned up). Put another way, "[a] defense of conflict preemption under § 514(a) does not provide a basis for federal question jurisdiction under either § 1331(a) or § 1441(a)." *Id.* at 949.

Turning to the merits, under *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004), "a state-law cause of action is completely preempted if (1) an individual, at some point in time, could have brought the claim under ERISA § 502(a)(1)(B), and (2) where there is no other independent legal duty that is implicated by a defendant's actions. . . . The two-prong test of *Davila* is in the conjunctive. A state-law cause of action is preempted by § 502(a)(1)(B) only if both prongs of the test are satisfied." *Marin Gen. Hosp.*, 581 F.3d at 946-47 (cleaned up). The Court will focus its analysis on Plaintiff's claim for unjust enrichment because if that claim is completely preempted, Defendant's removal effort was permissible. *Fossen*, 660 F.3d at 1113 & n.7 (so long as one cause of action is completely preempted under ERISA, a defendant may seek removal and the district court may then exercise supplemental jurisdiction over any non-preempted state-law claims that form part of the same case or controversy); *Melamed v. Blue Cross of Cal.*, 557 F. App'x 659, 661 (9th Cir. 2014) ("When one of a plaintiff's state-law claims is completely preempted by ERISA, the case may be removed to federal court even though the complaint does not state a federal cause of action on its face.").[3]

Under Arizona law, an unjust enrichment claim has "five elements: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law." *Freeman v. Sorchych*, 245 P.3d 927, 936 (Ariz. Ct. App. 2011). As for the first element, Defendant only could have obtained an "enrichment" if it had some obligation, under the underlying health-related plan, to pay for the medical services Plaintiff provided to S.H. (Doc. 15 at 11 ["It logically follows that Plaintiffs' unjust enrichment . . . claim[] reference[s] Defendant's ERISA plan because without an ERISA plan in question, Defendant as Plan Sponsor would not be under any obligation to pay [S.H.'s] claims."].) The allegations in the complaint are consistent with this conclusion. The complaint alleges that Defendant is "a plan sponsor for a health-

---

[3] The Court also clarifies that the result here would be the same if the complete preemption analysis focused on Plaintiff's other claims, such as the overlapping claims that were found to be completely preempted in *Wagoner v. State Industrial Products Corp.*, 2:25-CV-01763-JJT (Doc. 5).

related benefit plan";[4] that Plaintiff is suing in his capacity as an assignee of S.H. ("The patient lawfully assigned the right to payment to Plaintiff prior to the date of service"); that Defendant wrongfully denied a request for payment for the medical services Plaintiff provided to S.H. ("Defendant failed to remit any payment for these services . . . ."); and that Defendant was unjustly enriched as a result of this non-payment ("Defendant's conduct constitutes unjust enrichment under Arizona law: the benefit of medical services was delivered and retained, yet Defendant avoided compensating the Plaintiff entity that lawfully performed them"). (Doc. 1-1 at 6-7 ¶¶ 8-12.)  The complaint also clarifies that the damages being sought are the value of the medical services Plaintiff provided to S.H. ($6,800), although Plaintiff artificially reduced that demand to $3,500 to comply with the small claims court's jurisdictional limit without prejudice to his ability to increase the demand to $6,800 should the case be successfully removed. (*Id.* at 5-6 ¶¶ 3, 6.)  Further, Plaintiff clarifies in the motion to remand that he, himself, is "not a plan participant or beneficiary." (Doc. 13 at 4.)  The upshot is that Plaintiff's unjust enrichment claim rests on the premise that Defendant had an obligation to S.H., pursuant to the underlying health care plan, to pay for the medical services Plaintiff provided to S.H.

Given this backdrop, the first prong of *Davila*'s test for complete preemption is satisfied—Plaintiff's unjust enrichment claim is a claim that an individual (*i.e.*, S.H.) could have, at some point in time, brought under ERISA § 502(a)(1)(B).  Plaintiff is simply asserting that claim derivatively here, based on an assignment of rights from S.H.  *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1288-89 (9th Cir. 2014) ("As a non-participant health care provider, Spinedex cannot bring claims for benefits on its own behalf.  It must do so derivatively, relying on its patients' assignments of their benefits claims.").  This case is thus akin to *Davila*, where the Supreme Court determined that the first prong of the complete preemption test was satisfied because

---

[4] Given this allegation, there is no merit to Plaintiff's contention that a remand is required because Defendant did not "identify[] any specific plan, group number, or member ID." (Doc. 13 at 1.) Defendant also confirms in its response that S.H. "is a participant of Defendant's health-related benefit plan." (Doc. 15 at 3.)

- 6 -

the plaintiffs "complain[ed] only about denials of coverage promised under the terms of ERISA-regulated employee benefit plans." *Davila*, 542 U.S. at 211.[5] In contrast, this case is easily distinguishable from *Marin General Hospital*, where "the patient assigned to the Hospital any claim he had under his ERISA plan," the Hospital was then "paid the money owed to the patient under the ERISA plan," and the Hospital then sought "more money based upon a different obligation." *Marin Gen. Hosp.*, 581 F.3d at 948. Under those circumstances, the Ninth Circuit concluded that "[t]he obligation to pay this additional money does not stem from the ERISA plan, and the Hospital is therefore not suing as the assignee of an ERISA plan participant or beneficiary under § 502(a)(1)(B)." *Id.* Again, that is not the situation here.[6]

"The question under the second prong of *Davila* is whether there is no other independent legal duty that is implicated by a defendant's actions. If there is some other independent legal duty beyond that imposed by an ERISA plan, a claim based on that duty is not completely preempted under § 502(a)(1)(B)." *Marin Gen. Hosp.*, 581 F.3d at 949 (cleaned up). In *Wagoner v. State Industrial Products Corp.*, 2:25-CV-01763-JJT, Plaintiff asserted various state-law claims against the sponsor of a health-related plan, including that the defendant "misrepresented the terms of its policy, . . . made false statements regarding eligibility, [and] denied service in a fraudulent manner," and argued that "ERISA [was] neither pleaded nor implicated" because his claims "were brought exclusively under Arizona law." (*Wagoner*, Doc. 5 at 2, 4.) The court rejected those arguments and concluded that the second prong of the complete preemption test was satisfied because "regardless of the applicability of the cited Arizona statutes, each of Plaintiffs' claims is

---

[5] Indeed, as Defendant observes in its response to the motion to remand, "the *Davila* court noted Davila's requested recovery of tort damages sustained from the denial was a step removed from the language of § 1132(a). Such a concern is not present here as the Plaintiffs' requested recovery is the reimbursement for medical services performed, i.e. benefits due to a participant under the terms of the plan." (Doc. 15 at 14.)

[6] To be clear, "the mere fact of assignment" does not necessarily mean that a provider's claim against the sponsor of a health-related benefit plan satisfies the first prong of the test for complete preemption. *Marin Gen. Hosp.*, 581 F.3d at 949 (citing *Blue Cross of Cal. v. Anesthesia Care Associates Med. Grp., Inc.*, 187 F.3d 1045 (9th Cir. 1999)). It is the substance of the claim that matters.

dependent on ERISA, because they are each dependent on the existence of a plan and the duties imposed on those who administrate such plans. . . . Liability under the state statutes could exist only because of Defendant's administration of ERISA-governed plans, and thus no independent legal duty has been implicated here." (*Id.* at 6-7.) For substantially the same reasons, the second prong of the complete preemption test is satisfied here in relation to Plaintiff's unjust enrichment claim. As Defendant correctly notes, "every alleged legal violation in the Complaint, including unjust enrichment . . . , is predicated on Defendant's wrongful denial of reimbursement under the Defendant's health-related benefit plan which is governed by ERISA. To the extent the Defendant is obligated to reimburse Plaintiffs for its services performed on the participant, [S.H], the obligation stems from Defendant's establishment and maintenance of an ERISA regulated plan." (Doc. 15 at 15.)

The remaining arguments raised in Plaintiff's motion do not compel a different conclusion. Although Plaintiff purports to identify a variety of reasons why his "claims arise from . . . independent misrepresentations and diversions, not from enforcement of plan benefits" (Doc. 13 at 2-5), Plaintiff ignores that if Defendant "correctly concluded that, under the terms of the relevant plan, a particular treatment was not covered, [its] denial of coverage would not be a proximate cause of any injuries arising from the denial. Rather, the failure of the plan itself to cover the requested treatment would be the proximate cause. . . . [Defendant's] potential liability under [state law], then, derives entirely from the particular rights and obligations established by the benefit plan[]." *Davila*, 542 U.S. at 213.[7] This is particularly true with regard to the unjust enrichment claim. *Cf. Plastic Surgery Center, P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 241-42 (3d Cir. 2020) ("[Plaintiff's] unjust enrichment claims require the court to find that an ERISA plan exists in order to demonstrate that Aetna received a benefit—i.e., the discharge of its duties under that plan—and that retention of that benefit without payment would be unjust. . . . [T]here

---

[7] In a related vein, this case is distinguishable from *Marin General Hospital* because the plaintiff there, unlike here, "contend[ed] that [the defendant] entered into an independent oral contract during [a] telephone call" and the "various state-law claims asserted by the [plaintiff] all [arose] out of what was allegedly said during that call." *Marin Gen. Hosp.*, 581 F.3d at 950.

simply is no cause of action for unjust enrichment if there is no plan."); *Abira Med. Labs., LLC v. Anthem Blue Cross Life & Health Ins. Co.*, 2025 WL 1664596, *11 (C.D. Cal. 2025) ("Without the relevant ERISA plan, there would be no basis for a breach of contract claim; accordingly, the existence of the plan is essential to the claim's survival. . . . [T]he conclusion is no different for the claim for quantum meruit / unjust enrichment.").

Plaintiff also identifies three purported technical defects in Defendant's removal effort: (1) "Defendant did not attach all state-court process and pleadings"; (2) "Defendant filed two inconsistent removal notices"; and (3) "Defendant asserted ERISA despite Plaintiff's express disclaimer." (*Id.* at 5.) As for the first purported defect, Plaintiff has not identified which, if any, documents are missing and the Court can remedy any omission by imposing a new deadline for Defendant to file any missing documents. *Alston v. Midland Credit Mgmt. Inc.*, 2025 WL 2444056, *4 (D. Ariz. 2025). As for the second purported defect, Plaintiff does not explain why the two notices are inconsistent and the second merely appears to be the notice that Defendant filed in state court. As for the third purported defect, as discussed in earlier portions of this order, Plaintiff's express disclaimer of any reliance on ERISA is not dispositive. *Fossen*, 660 F.3d at 1110-11 ("This question requires a practical, rather than a formalistic, analysis because claimants simply cannot obtain relief by dressing up an ERISA benefits claim in the garb of a state law tort.").

Accordingly,

**IT IS ORDERED** that:

1. Plaintiff's motion to remand (Doc. 13) is **denied**.

2. Within 30 days of the issuance of this order, Defendant must provide (a) a certified copy of the entire state court record, as required by LRCiv 3.6, or (b) a notice avowing that the entire state court record has already been provided.

Dated this 7th day of October, 2025.

Dominic W. Lanza
United States District Judge